IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-03114-PAB

LOUIS CONRAD,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on the Complaint and Petition for Review [Docket No. 1] filed by plaintiff Louis Conrad on December 22, 2017. Plaintiff seeks review of the final decision of defendant Andrew M. Saul (the "Commissioner")[1] denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-34. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[2]

**I. BACKGROUND**

In August 2016, plaintiff filed an application for disability insurance benefits

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as defendant in this lawsuit. *See* Fed. R. Civ. P. 25(d).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

under Title II of the Act, alleging a disability onset date of August 11, 2015. R. at 94, 110, 175, 187. His claim was initially denied on January 20, 2017. R. at 113. On July 6, 2017, plaintiff appeared at a hearing before an administrative law judge ("ALJ") to testify regarding his disability. R. at 34. On July 13, 2017, the ALJ issued a decision denying plaintiff's claim. R. at 20, 29. Considering an alleged onset date of August 1, 2016, the ALJ found that plaintiff had the following severe impairments: anxiety, obsessive-compulsive disorder, depression, schizophrenia, lumbago, and chronic dependent edema of the right foot. R. at 20, 22. The ALJ concluded that these impairments, alone or in combination, did not meet or medically equal of the regulations' listed impairments. R. at 22-23. The ALJ further determined that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following specific limitations:

> can stand and/or walk for 6 hours in an 8-hour day; occasionally requires use of a cane while walking; cannot climb stairs, ladders, ropes or scaffolds; cannot be exposed to temperature extremes or unprotected heights; limited to simple and routine work activities; and can have occasional contact with supervisors and coworkers but no contact with the public.

R. at 23. Based on this RFC and in reliance on the testimony given by a vocational expert ("VE") at the March 2016 hearing, the ALJ determined that plaintiff was unable to perform his past relevant work but could perform other jobs existing in significant numbers in the national economy, including the positions of merchandise marker, electrical assembler, and laundry worker. R. at 27-28.

On November 16, 2017, the Appeals Council denied plaintiff's request for review

of the ALJ's decision. R. at 1-6.[3] Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court must not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a

---

[3] In its letter denying plaintiff's request for review, the Appeals Council declined to consider new evidence that plaintiff had attempted suicide in July 2017. R. at 2. The Appeals Council determined that the additional evidence did "not relate to the period at issue" and therefore did "not affect the decision about whether [plaintiff was] disabled beginning on or before July 13, 2017." *Id.*

ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV.  DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to properly evaluate all of the relevant medical evidence, Docket No. 15 at 6-13; (2) rejecting the opinions of plaintiff's treating physician, *id.* at 14-16; (3) finding that plaintiff's impairments did not meet or medically equal a listed impairment, *id.* at 16-18; (4) finding that plaintiff's subjective reports of his symptoms were inconsistent with the medical evidence, *id.* at 18-19; and (5) failing to demonstrate, at step five of the sequential evaluation, that plaintiff had the residual functional capacity to perform work existing in the national economy.  *Id.* at 20.  Because it is dispositive, the Court limits its discussion to the ALJ's treatment of the medical evidence.

Plaintiff contends that the ALJ failed to address all of the evidence pertaining to plaintiff's psychological impairments. *See* Docket No. 15 at 8-13. At step two of the sequential evaluation, the ALJ determined that plaintiff suffered from four severe mental impairments: anxiety, obsessive-compulsive disorder, depression, and schizophrenia. R. at 22. In considering the relevant medical evidence at subsequent steps, however, the ALJ determined that plaintiff's mental impairments did not give rise to functional limitations that would mandate a finding of disability. *See* R. at 24-27.[4]

The ALJ based this conclusion on two sets of treatment records: records from Denver Health Medical Center predating plaintiff's alleged disability onset date of August 1, 2016, and records from plaintiff's treatment at the Mental Health Center of Denver ("MHCD") in March and April 2017. *See* R. at 25-26. The ALJ noted that, although the earlier records "reflect[ed] treatment for schizoaffective disorder, depressed type, with medication management," plaintiff had experienced "[i]mproved symptoms . . . in terms of better sleep and more stable mood with less agitation/reactivity" on medication. R. at 25. The ALJ further observed that plaintiff was described as "doing reasonably well on Seroquel" by July 2016. *Id.*

As to the more recent records from MHCD, the ALJ noted that plaintiff initially

---

[4]The ALJ determined at step three that plaintiff's functional limitations did not satisfy the "B" or "C" criteria for listings 12.03, 12.04, 12.06, and 12.08. R. at 23. However, the ALJ's step three discussion does not contain any independent analysis of the evidence supporting the finding that plaintiff suffered from only mild to moderate limitations in the relevant categories. *See id.* Instead, the ALJ appears to base his conclusions at step three on his later assessment of plaintiff's RFC. *See id.* (noting that "[t]he factors documenting the mental impairments and the degrees of limitation are reflected in the discussion of the medical evidence below").

presented with poor personal hygiene, anger, paranoia, and depression, but later exhibited "improved mood," good hygiene, normal behavior, and "organized thoughts" after being placed on medication. R. at 26. The ALJ concluded that the evidence as a whole showed plaintiff "to have improved mental symptoms when he takes prescribed psychotropic medications" and did not support the "marked" and "extreme" functional limitations assessed by Dr. Ken MacIntyre in his June 2017 report. *Id.*

The Court agrees with plaintiff that the ALJ failed to address all of the relevant evidence in assessing the severity and limiting effects of plaintiff's mental impairments. While an ALJ need not "discuss every piece of evidence," the ALJ is required to discuss the "significantly probative evidence that he rejects" in reaching his conclusions. *Deardorff v. Comm'r*, 762 F. App'x 484, 491 (10th Cir. 2019) (unpublished) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Id.* (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)). In discussing plaintiff's medical records in this case, the ALJ failed to address evidence showing that, despite improvements in plaintiff's mental impairments as a result of medication, plaintiff continued to exhibit significant psychological symptoms. For example, the ALJ noted that plaintiff showed "[i]mproved symptoms . . . in terms of better sleep and more stable mood with less agitation/reactivity" at a treatment visit on April 19, 2016. R. at 25 (citing Exhibit B2F, pp. 20-21). However, progress notes from the same visit, which are not addressed in the ALJ's decision, indicate that "longer discussions lead to more

anger," plaintiff was only "[s]lightly less reactive to perceived slights," and plaintiff was continuing to experience suicidal thoughts, perseverative thought processes, loose associations, paranoia, and auditory hallucinations. R. at 288. Similarly, although plaintiff's records from May and July 2016 support a finding that plaintiff was "doing reasonably well on Seroquel," R. at 25, those same records indicate that plaintiff was continuing to exhibit psychological symptoms, including paranoia, difficulty concentrating, suicidal and homicidal ideation, and visual and auditory hallucinations. R. at 319, 398-99. There is no discussion of these symptoms in the ALJ's analysis.

Regarding plaintiff's treatment records from 2017, the ALJ's summary suggests that plaintiff experienced consistent and linear improvement as a result of his medication. *See* R. at 26. Yet records from April 17 and April 19 indicate poor hygiene, homicidal ideation, and the persistence of hallucinations. *See* R. at 456, 461. The records also show that plaintiff had stopped taking Seroquel because it "made him feel 'nothing,'" R. at 454, and was experiencing significant fatigue as a result of his new medication. R. at 453.

In summary, the ALJ "failed to discuss all of the significantly probative evidence relevant to [plaintiff's] mental impairment, discuss how he resolved the conflicts in this evidence, or discuss how he resolved the conflicts between his findings and his evidence." *Carpenter*, 537 F.3d at 1269. This failure calls into question the ALJ's findings that plaintiff's mental impairments did not meet or equal a listed impairment, *see* R. at 23, that plaintiff's statements regarding the limiting effects of his symptoms were inconsistent with the objective medical evidence, R. at 25, and that the medical

evidence did not support the "marked" or "extreme" functional limitations assessed by Dr. MacIntyre in June 2017. R. at 26. As a result, the Court cannot conclude that the ALJ's ultimate determination – that plaintiff was capable of performing jobs existing in significant numbers in the national economy – is supported by substantial evidence. The Court will therefore reverse the ALJ's decision and remand for the ALJ to consider the conflicting evidence regarding plaintiff's mental impairments in assessing whether those impairments meet or equal a listed impairment at step three and in evaluating plaintiff's residual functional capacity. *See Deardorff*, 762 F. App'x at 490 (holding that the ALJ erred by failing to discuss the significant evidence of the claimant's headaches and remanding for the ALJ to consider that evidence in assessing the claimant's RFC); *Carpenter*, 537 F.3d at 1270 (reversing and remanding due to the ALJ's failure to "adequately discuss the evidence and tie his conclusions to the evidence" at step three).

The Court declines to address plaintiff's remaining objections to the ALJ's decision because they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). On remand, however, the ALJ should address whether plaintiff is entitled to an earlier alleged onset date of August 11, 2015. *See* Docket No. 15 at 1; R. at 175 (alleging a disability onset date of August 11, 2015); *see also* Docket No. 16 at 10 n.3 (acknowledging "[i]t is unclear why" plaintiff's alleged disability onset date changed from August 11, 2015 to August 1, 2016). The ALJ

should also consider the evidence of plaintiff's July 2017 suicide attempt in evaluating the severity of plaintiff's mental impairments.  See Docket No. 15 at 13; R. at 10-16.[5]

## V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this order.

DATED June 1, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge

---

[5] Plaintiff submitted this evidence to the Appeals Council, R. at 271, which declined to consider it on the basis that plaintiff's suicide attempt post-dated the ALJ's decision and therefore did not relate to plaintiff's alleged period of disability.  See R. at 2.  The Court disagrees with that conclusion.  Because plaintiff's suicide attempt is pertinent to issues addressed in the ALJ's decision – namely, the severity of plaintiff's mental impairments on medication – it is chronologically relevant.  See Padilla v. Colvin, 525 F. App'x 710, 712-13 (10th Cir. 2013) (unpublished) (finding psychological evaluation chronologically relevant because, although it post-dated the ALJ's decision, it "corroborat[ed] an anxiety diagnosis reported" by the claimant's doctor prior to the administrative hearing).  Additionally, the evidence is new – i.e., it was not available at the time of the ALJ's decision – and has a reasonable possibility of affecting the ALJ's decision on remand by casting doubt on the finding that plaintiff's psychological symptoms improved significantly with treatment.  See id. at 712 (stating that "additional evidence should only be considered it if is new, material, and chronologically pertinent" (citing 20 C.F.R. § 416.1470(b))); Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003) (explaining that evidence is "new" if it is not duplicative or cumulative and "material . . . if there is a reasonable possibility that it would have changed the outcome" (internal quotation marks and bracket omitted)).